**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**MICHAEL EUGENE DAVIS,**                                                      **PETITIONER**

**v.**                                              **CIVIL ACTION NO.:  3:13cv253-MPM-SAA**

**RONALD KING and ATTORNEY GENERAL**
**OF THE STATE OF MISSISSIPPI,**                                              **RESPONDENTS**


**MEMORANDUM OPINION AND ORDER**

Petitioner Michael Eugene Davis, Mississippi prisoner no. 164121, has filed a pro se

federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his State court conviction for

armed robbery.  Having considered the submission of the parties, the State court record, and the

law applicable to Davis' claims, the Court finds that the petition should be denied, for the

reasons that follow.

**Background Facts and Procedural History**

The night clerk at the Ramada Inn in Horn Lake, Mississippi, was robbed on October 10,

2006.  Tthe robber used a BB gun that resembled a semi-automatic weapon during the

commission of the crime.  (SCR vol. 5, 210).  The victim was able to provide police with a

description of the robber, along with a partial license plate and a description of the vehicle the

robber was using.  (*Id.* at 192).  Based on this information, law enforcement issued a "Be On the

Lookout" ("B.O.L.O.") for the suspect using photographs from the hotel surveillance video.  (*Id.*

at 193).  On October 17, 2006, the Memphis Police Department informed the Horn Lake Police

Department that the Memphis police had a suspect was in custody that matched the B.O.L.O.

(*Id.* at 197).  Horn Lake law enforcement officials were also informed by the Memphis Police

Department that the suspect was driving a vehicle that matched the one described as being connected with the robbery at the time he was taken into custody. (*Id*. at 197). The suspect was Davis.

Based on the fact that a suspect was in custody, a six-photograph array was compiled and shown to the victim, who identified Davis as the robber. (*Id*. at 198, 201). Horn Lake Police Detective Roger Hutchins then went to Memphis and interrogated Davis for approximately twelve minutes, during which time Davis provided a statement implicating himself in the robbery. (*Id.* 202-03). In his statement, Davis was able to accurately describe the victim, and he stated that he recalled going in and using the hotel bathroom before he came out of the bathroom with a gun and told the clerk to "gimme the money[.]" (*Id.* at 205; Answer, Ex. H, pp. 6, 13).

Davis was subsequently indicted in the Circuit Court of DeSoto County, Mississippi, and a jury found him guilty of armed robbery. (SCR vol. 1, 99; SCR vol. 5, 275). He was sentenced as an habitual offender to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. (SCR vol. 1, 122; SCR vol. 5, 309).

Davis appealed his conviction and sentence to the Mississippi Supreme Court, which assigned the matter to the Mississippi Court of Appeals. The sole issue raised in Davis' appeal was whether the trial court erred in failing to grant his suppression motion. The appellate court affirmed Davis' conviction and sentence on June 26, 2012. (*See* Answer, Ex. A); *see also Davis v. State*, 2012 WL 2384134 (Miss. Ct. App. 2012) (Cause No. 2010-KA-02097-COA). Davis' motion for rehearing was denied on November 7, 2012. (*See* Answer, Ex. B). Davis did not seek certiorari review of his appeal with the Mississippi Supreme Court or the United States Supreme Court.

Davis subsequently sought permission from the Mississippi Supreme Court to proceed in

the trial court with a pro se petition for post-conviction relief. He raised the following issues, as

paraphrased by the Court:

    I.  Violation of speedy trial rights
   II.  Improper sentencing as an habitual offender
  III.  Ineffective assistance of trial and appellate counsel
        A.  Speedy trial issue
        B.  Failure to object to Davis' sentence as an habitual offender
        C.  Appellate counsel's failure to properly challenge trial counsel's
           effectiveness regarding the speedy trial issue

The Mississippi Supreme Court denied his application, finding his claims without merit. (*See*

Answer, Ex. C).[1]

On or about October 21, 2013, Davis filed the instant federal habeas petition raising the

following grounds for relief:

    I.      Violation of speedy trial rights
   II.      Improper sentencing as an habitual offender
  III.     Ineffective assistance of counsel
        A.  Failing to move for a directed verdict
        B.  Failing to investigate the facts of the robbery, the victim's
           background, the photo line-up, and any mental or drug
           abuse history
        C.  Failing to investigate or analyze similar vehicles with similar
           license plate numbers in the area at the time
        D.  Allowing evidence of prior bad acts to be presented to the jury
        E.  Failing to provide Davis with discovery
        F.  Failing to question the victim regarding the weapon used

---

[1] After the Mississippi Supreme Court denied Davis' application, he filed an "Affidavit to the Clerk" in the DeSoto County Circuit Court, which the court interpreted as a request for the production of documents. The court denied the request. (*See* Answer, Ex. D). Davis filed a notice of appeal challenging that order, and the Mississippi Supreme Court denied Davis' subsequent motion to proceed in forma pauperis in the action. (*See* Answer, Exs. E and F). Thereafter, Davis' appeal, docketed as Cause No. 2013-TS-1481, was dismissed for failure to pay costs. (*See* Answer, Ex. G). That appeal does not relate to the criminal conviction and sentence challenged by the instant petition.

G.  Failing to call witnesses for the defense

H.  Failing to question the validity of the State's witnesses

I.  Failing to object to Davis' sentence as an habitual offender

IV.     Ineffective assistance of appellate counsel

A.  Failing to meet with Davis

B.  Failing to raise a challenge to the sentence as an habitual offender

C.  Failing to raise a speedy trial claim

**Legal Standard**

The Court's review of Davis' claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date.  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence.  *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000).  The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case.  *Id*. at 407.  Under this standard, a state court's decision will not warrant federal habeas relief unless its application of federal law is both incorrect *and* unreasonable.  *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004) (emphasis in original)

4

(citation omitted).  A reviewing habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law, not the court's reasoning in reaching the decision.  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

Additionally, a state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997).

## Discussion

### I.  Procedurally Barred Claims

The allegations in Ground Three (B), (C), (D), (E), (F), (G), and (H) and Ground Four (A) have never been raised in the State courts.  Because he failed to present these claims on direct appeal or in his petition for post-conviction collateral review, Davis has waived the opportunity to have the Mississippi Supreme Court consider the claims on their merits and has defaulted the claims for purposes of federal habeas review.  *See Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief.").

In order for the Court to reach the merits of these otherwise defaulted claims, Davis must demonstrate cause for the default and resulting prejudice, or that a fundamental miscarriage of justice would occur if the Court fails to consider the claims.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Court finds that neither exception is applicable in this case.  Davis has not identified any impediment external to his defense that would have prevented him from

raising these claims in the State courts. *United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). While attorney error can, in some circumstances, constitute "cause" to overcome a procedural default, *see, e.g., Coleman*, 501 U.S. at 753-54, the Court notes that Davis represented himself in his post-conviction proceedings. Accordingly, attorney error cannot explain his failure to present these particular claims to the State courts.

Additionally, Davis has not alleged that a fundamental miscarriage of justice would result from the failure to consider these claims on their merits. The fundamental miscarriage of justice exception is confined to cases of actual innocence "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation omitted). To establish the requisite probability of actual innocence, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted). The Court finds the fundamental miscarriage of justice exception inapplicable in this case. Accordingly, the claims raised in Ground Three (B), (C), (D), (E), (F), (G), and (H) and Ground Four (A) are barred from federal habeas review.

## II. Violation of Speedy Trial Rights

Davis alleges that his right to a speedy trial was infringed in this case. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI.[2] Allegations of constitutional speedy trial

---

[2] This guarantee is applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213 (1967).

violations are governed by the test laid out in *Barker v. Wingo*, 407 U.S. 514 (1972), where the Supreme Court announced four factors to be weighed in reaching a speedy trial determination: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of the speedy trial right; and (4) prejudice to the accused. *Id.* at 530.

Relevant to the speedy trial issue are the following dates:

- October 10, 2006: Davis robs the Ramada Inn in Horn Lake, Mississippi.

- October 17, 2006: Davis is arrested by the Memphis Police Department in Tennessee. (*See, e.g.*, SCR vol. 3, 30-31).

- January 18, 2007: Davis is indicted on Mississippi charges of armed robbery and a detainer is filed against him. (SCR vol. 1, 10; 16).

- May 23, 2007: Davis is indicted on federal robbery charges. (*See* SCR vol. 1, 46-51).

- June 20, 2008: Davis is sentenced to 72 months' imprisonment on his federal charges following a guilty plea. (SCR vol. 1, 46-54).

- September 8, 2009: Davis files a notice in the Circuit Court of DeSoto County, Mississippi asserting his speedy trial rights. At the time, he was serving his federal sentence at a federal penitentiary in Pollock, Louisiana. (SCR vol. 1, 11-13).

- February 18, 2010: The DeSoto County Circuit Court orders that Davis be brought to Mississippi for court proceedings related to his State armed robbery charge. (SCR vol. 1, 14-15).

- March 24, 2010: A scheduling order is entered setting Davis' armed robbery trial date for June 14, 2010. (SCR vol. 1, 18).

- June 9, 2010: At a pretrial hearing, the State requests and is granted a continuance of the trial date over defense counsel's objections. (SCR vol. 3, 3-6).

- August 23, 2010: Davis' armed robbery trial begins.

In order to trigger a full *Barker* analysis, an accused must allege a "presumptively prejudicial" delay between the time of accusation and trial. *Id.* at 530-31. Courts, including the Fifth Circuit, have held a one-year delay to be sufficient to trigger a full *Barker* analysis. *See, e.g., Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Davis' speedy trial clock began running on January 18, 2007,when he was indicted for the crime at issue in this petition.[3] *See Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1992) ("The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first.") (citing *Dillingham v. United States*, 423 U.S. 64 (1975)). Davis' trial began on August 23, 2010. (SCR vol. 4, 72). More than three years lapsed between Davis' indictment and his trial. This delay weighs in Davis' favor and is sufficient to trigger a full *Barker* analysis.

The second *Barker* inquiry is the reason for the delay and whether the delay is attributable to the actions of the State or the defendant. The Fifth Circuit has held:

> The weight assigned to a state's reasons for post-accusation delay depends on the reasons proffered. At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. *See Cowart v. Hargett*. Between these extremes fall unexplained or negligent delays, which weigh against the state, "but not heavily."

*Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008). The defendant must show "that the State delayed the prosecution in order to gain an 'impermissible advantage at trial'" in order for this factor to weigh heavily against the state. *Id*. at 259 (citing *Doggett v. United States*, 505 U.S.

---

[3] Davis' rights did not attach upon his earliest arrest for violations of Tennessee and/or federal law. The basis for arrest is critical in determining when the right to a speedy trial attaches. *Gravitt v. United States*, 523 F.2d 1211, 1215 n.6 (5th Cir. 1975) (citation and quotation marks omitted).

647, 655 (1992)).

In the period of time between his indictment and trial on the armed robbery conviction at issue here, Davis was incarcerated on separate charges.[4] (*See* ECF no. 3, 15). Davis was indicted on federal charges on May 23, 2007, and on June 20, 2008, he was sentenced to a term of seventy-two months imprisonment in a federal facility. (SCR vol. 1, 46-52).[5] On September 8, 2009, Davis filed a "Notice/Motion for Disposition of Pending Charges" in the DeSoto County Circuit Court, seeking a "speedy disposition of the charge" he faced in Mississippi. (SCR vol. 1, 11). On February 16, 2010, the DeSoto County Circuit Court issued an "Order for Writ of Habeas Corpus Ad Prosequendum" ordering Davis to be brought back to a Mississippi for a hearing on March 29, 2010. (*See* Answer, Ex. I). An initial scheduling order was entered on March 24, 2010, setting Davis' trial for June 14, 2010. (SCR vol. 1, 18). Davis was still in federal custody on June 9, 2010, when he was brought to Mississippi for purposes of a pretrial hearing. (SCR vol. 3, 5). At the hearing, the State moved for a continuance because the lead investigator was on vacation and was unable to be present for trial. (SCR vol. 3, 3). The defense objected to the continuance, but because the case had only been set for trial since March 24, 2010, the trial court granted the continuance. (*Id*. at 5, 6). The trial court noted, however, that the speedy trial time would run against the State from the original trial date to the new trial date. (*Id.*). Davis' trial began on August 23, 2010. (SCR vol. 4, 72).

---

[4] Davis concedes that he was incarcerated pursuant to his arrest by the Memphis Police Department, and that he was later incarcerated in Louisiana on federal charges. (*See. e.g.*, ECF no. 3, 15).

[5] Davis states that he was sentenced on his federal charges on June 26, 2008. (ECF no. 3, 16). The order was docketed on June 26, 2008, but Davis was actually sentenced on June 20, 2008. (SCR vol. 1, 52).

It appears that the majority of the delay in Davis' case was caused by his incarceration in another jurisdiction. The Fifth Circuit has "held that where the delay results from the defendant being in the custody of another sovereign, 'the proper focus is. . . whether, and to what extent, the state took steps to bring [the defendant] back . . . for trial.'" *United States v. Vernon*, 511 F. App'x 318, 321 (5th Cir. February 6, 2013) (citing *Nelson v. Hargett*, 989 F.2d 847, 853 (5th Cir. 1993). Davis asserts that the State filed a detainer against him on the date he was indicted, which was January 18, 2007. (*See, e.g.*, SCR vol. 1, 11). Once Davis requested a speedy trial in September of 2009, however, the State acted within months to coordinate Davis' transport to Mississippi to face charges. There is no indication in this case that the delay was created by the State in order to obtain an unfair advantage. Accordingly, the Court finds that this factor weighs against the State, but not heavily. *See Doggett*, 505 U.S. at 656 (holding that this factor does not weigh heavily against the state unless the defendant shows that the delay was caused by the prosecution in order to gain an "impermissible advantage at trial").

The third *Barker* consideration is whether the defendant effectively asserted his right to a speedy trial. Davis filed a motion seeking a "speedy disposition of the charge" in the DeSoto County Circuit Court in September 2009, more than thirty months after he was indicted and a detainer was lodged against him. (*See* SCR vol. 1, 11).[6] Despite his significant delay, however, the Court will assume that Davis' assertion of his speedy trial right weighs in his favor.

---

[6] This factor has been counted against a defendant who fails to diligently assert his right to a speedy trial. *See United States v. Parker*, 505 F.3d 323, 330 (5th Cir. 2007) (finding fourteen month delay in asserting right dilatory); *see also United States v. Frye*, 372 F.3d 729, 739 (5th Cir. 2004) (noting that lapse of one year between indictment and formal request for speedy trial "cuts against presuming prejudice").

Finally, the Court considers the actual prejudice Davis suffered as a result of the delay.[7] "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired.'" *Amos v. Thorton*, 646 F.3d 199, 208 (5th Cir. 2011) (citation omitted). The last of these is "the most serious," as "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Davis argues prejudice as a result of the delay because, during his federal incarceration, the Mississippi detainer lodged against him affected his classification by the Bureau of Prisons. (ECF no. 3, 18). As Respondents note, however, if Davis had been tried and sentenced in Mississippi while he was in federal custody, a detainer still would have been filed with the Bureau of Prisons demanding Davis' return to Mississippi after completion of his federal sentence. Accordingly, this argument fails to establish prejudice.

Davis also argues that he suffered anxiety because Mississippi's sentence did not run concurrently with his federal charges. (ECF no. 3, 9). However, the decision whether to run a sentence concurrently with a previously imposed sentence is within the sentencing judge's discretion. Miss. Code Ann. § 99-19-21(1); *see also* 18 U.S.C. § 3584. There is no guarantee that the trial judge would have ordered Davis' State sentence to run concurrently with his federal sentence even if Davis had been sentenced in Mississippi prior to the expiration of his federal sentence. Davis was not prejudiced merely because he desired but did not receive concurrently

---

[7] Courts will afford a delay a presumption of prejudice only where the first three factors weigh heavily in the defendant's favor and delay is at least five years. *See, e.g., Goodrum*, 547 F.3d at 260-61.

run sentences.

Davis also claims that two friends who would have testified on his behalf as to his character and as to his whereabouts on the night of the crime overdosed and/or disappeared during the delay between Davis' indictment and trial. (ECF no. 3, 12). However, the facts of this case demonstrate that the unspecified testimony of these witnesses would have yielded little benefit to the defense. Based upon hotel surveillance videos and the victim's description of the robber and the vehicle, a B.O.L.O. was issued for the suspect. Davis was arrested by the Memphis Police Department and was driving a vehicle that matched the partial plate listed in the B.O.LO. (*See, e.g.*, SCR vol. 5, 197). A BB gun matching the victim's description of the gun used in the robbery was found in Davis' vehicle upon his arrest. (SCR vol. 5, 222). The victim identified Davis in a photo lineup. (*Id.* at 201). Davis provided a statement to law enforcement in which he accurately described the victim and admitted that he came out of the bathroom with a gun before he told the clerk to "gimme the money." (*Id.* at 203 and 205; *see also* Answer, Ex. H). Accordingly, Davis' allegations fail to demonstrate prejudice.

Finally, Davis argues that he was prejudiced at his sentencing by the State's delay in bringing him to trial, because the State used his federal robbery convictions to support an habitual offender enhancement in this case.[8] Davis was found to be an habitual offender under Miss. Code Ann. § 99-19-83, which mandates a life sentence without the possibility of parole for a defendant who has served at least one year in prison on two prior felonies, one of which is a

---

[8] The Fifth Circuit has held that the Sixth Amendment right to a speedy trial extends through sentencing. *See, e.g.*, *United States v. Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976) (citing *Pollard v. United States*, 352 U.S. 354 (1977)); *Juarez-Casares v. United States*, 496 F.2d 190, 192 (5th Cir. 1974) (holding that "the imposition of sentence is part of the trial for the purposes of the Sixth Amendment speedy trial guarantee").

crime of violence.  *See* Miss. Code Ann. § 99-19-83.  Because he was found to be an habitual

offender under Miss. Code Ann. § 99-19-83, Davis was sentenced to life imprisonment without

eligibility for probation or parole.  Davis was sentenced on federal robbery charges in June 2008.

Davis argues that he would not have yet served a year of his federal sentence as required to find

him an habitual offender had Mississippi tried him prior to June 2009.  (ECF no. 25, 8).

A conviction of armed robbery carries with it an imprisonment "for life in the state

penitentiary if the penalty is so fixed by the jury," and where the jury does not so fix the penalty,

"the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than

three (3) years."  Miss. Code Ann. § 97-3-79.  Under Mississippi law, anyone convicted of armed

robbery after October 1, 1994, is not eligible for probation or parole.  *See* Miss. Code Ann. § 47-

7-3(1)(d)(i).  Accordingly, Davis always faced a possible sentence of life without parole under

Mississippi's statutory sentencing scheme, and his allegation of prejudice is speculative.

Upon a balance of all of the *Barker* factors in this case, the Court finds that the decision

rejecting Davis' speedy trial claim is neither contrary to, nor does it involve an unreasonable

application of, clearly established federal law.  Additionally, the decision was not based on an

unreasonable determination of facts in light of the evidence presented.  Federal habeas relief is

not warranted.

## III.  Habitual Offender

Davis argues that he was improperly sentenced as an habitual offender pursuant to Miss.

Code Ann. § 99-19-83, which allows for a defendant to be sentenced as an habitual offender if he

served a term of imprisonment of a year or more on two or more prior felonies, one of which is

violent.

On August 2, 2010, the State moved to amend Davis' indictment to charge him as an habitual offender pursuant to Miss. Code Ann. § 99-19-81. (SCR vol. 3,13). That statute provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-18-81. In support of their motion, the State submitted certified copies of Davis' January 17, 1985, judgments for three counts of burglary in the Criminal Court of Shelby County, Tennessee. (SCR vol. 1, 35, 40, 45). Davis was sentenced to serve three years on each count, with the sentences to run concurrently. (*See id.*).[9] At that time, the prosecution reserved the right to amend the charge to indict Davis as an habitual offender pursuant to Miss. Code Ann. § 99-19-83 once it obtained certified copies of Davis' federal convictions. (*See* SCR vol. 3, 16). The trial court granted the motion and amended the indictment to reflect Davis' status as an habitual offender under § 99-19-81, "the lesser of the two habitual offender statutes." (*Id.* at 15-16).

On August 20, 2010, Davis' indictment was amended to reflect Davis' federal robbery convictions and to charge him as an habitual offender pursuant to Miss. Code Ann. § 99-19-83.

---

[9] The record also contains certified copies of judgments showing Davis pleaded guilty to assault and domestic violence assault on May 25, 1999, and was sentenced to serve a term of six months on each charge. (*See* SCR vol. 1, 27 and 30).

(SCR vol. 3, 62-63).  Section § 99-19-83 provides:

> Every person convicted in this state of a felony who shall have been convicted
> twice previously of any felony or federal crime upon charges separately brought
> and arising out of separate incidents at different times and who shall have been
> sentenced to and served separate terms of one (1) year or more in any state and/or
> federal penal institution, whether in this state or elsewhere, and where any one (1)
> of such felonies shall have been a crime of violence shall be sentenced to life
> imprisonment, and such sentence shall not be reduced or suspended nor shall such
> person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83.  The defense objected to the amendment on the basis that Davis

had not been convicted of those offenses at the time his Mississippi crimes were committed, and

therefore, he was not eligible to be sentenced pursuant to § 99-19-83.  (SCR vol. 3, 61; SCR vol.

5, 297-98).  However, the trial court ultimately determined that the appropriate question was

whether Davis was eligible for the enhancement at the time of sentencing.  (*See* SCR vol. 3, 61;

SCR vol. 5, 307-08).  At Davis' sentencing, the State introduced certified copies of Davis'

judgment in federal court for two counts of robbery pursuant to 18 U.S.C. § 1951, for which

Davis was sentenced to concurrent terms of seventy-two months.  (*See* SCR vol. 1, 52-58; SCR

vol. 5, 289).  One count of robbery occurred on October 2, 2006, and the other occurred on

October 17, 2006.  (SCR vol. 1, 52).  Davis was taken into federal custody for these charges on

June 14, 2007.  (Answer, Ex. J).  He was sentenced on the two offenses on June 20, 2008, and

was given a pretrial credit of 680 days in his federal cases.  (SCR vol. 5, 291).  Davis remained in

the custody of the Federal Bureau of Prisons from June 2007 up through August 2010, when he

was "loaned" to the DeSoto County Sheriff's Department for his State trial.  (*See id.*).

Davis argues that because his federal sentences were ordered to run concurrently, they did

not qualify as two separate offenses as required by the § 99-19-83 habitual offender statute.

However, the Mississippi Supreme Court has held "that concurrent sentences for separate crimes arising out of separate incidents would support an habitual offender finding under Miss. Code Ann. § 99-19-81 (Supp. 1987)." *King v. State*, 527 So. 2d 641, 645 (Miss. 1988) (citing *Jackson v. State*, 518 So. 2d 1219 (Miss. 1988)). Later, the Mississippi Supreme Court stated:

> Today, we reinforce our holding. . . that serving one year or more on concurrent sentences for separate convictions arising out of separate incidents amounts to serving more than one year on each sentence for the purpose of enhanced sentencing under § 99-19-83 which applies to defendants "who shall have been sentenced to and served separate terms of one (1) year or more. . ." To hold otherwise would discourage the imposition of concurrent sentences when warranted under the circumstances.

*Bogard v. State*, 624 So. 2d 1313, 1320-21 (Miss. 1993). Accordingly, Davis' contention is without merit.

Davis also argues that his 1985 Tennessee convictions for burglary did not satisfy the habitual offender statute, as he only served 136 days on those convictions. At Davis' sentencing hearing, the State provided certified copies of Davis' Tennessee burglary convictions and sentences. However, the prosecution specifically noted that they would not qualify as prior convictions under § 99-19-83, because Davis did not serve a year or more on those offenses. (SCR vol. 5, 292).[10] Therefore, these convictions were not used to support Davis' sentence as an habitual offender under § 99-19-83.

In this case, the trial judge found Davis eligible to be sentenced pursuant to § 99-19-83 and conducted a proportionality analysis before sentencing him as an habitual offender. (SCR vol. 5, 307-09). Davis' federal convictions were for two separate offenses which occurred on

---

[10] The prosecutor noted that the convictions would qualify Davis as an habitual offender under § 99-19-81. (SCR vol. 5, 296).

two separate dates.  He served a term of incarceration of more than one year pursuant to each of those convictions.  Under Mississippi law, the fact that those sentences ran concurrently does not alter the fact that Davis was eligible to be sentenced pursuant to §99-19-83.[11]  Accordingly, the Court finds that the State court's decision rejecting Davis' challenge to his habitual offender status is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law.  It further finds that the decision rejecting this claim was not based on an unreasonable determination of facts in light of the evidence presented.  Federal habeas relief is not warranted.

## IV.    Ineffective Assistance of Counsel

Davis alleges that he was denied the effective assistance of counsel at trial and on appeal. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  *See, e.g.,Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  A federal habeas petitioner's claim that he was denied the effective assistance of counsel at trial is generally measured by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, Davis must establish that (1) his trial counsel's performance was so deficient that it cannot be said that he was functioning as "counsel" within the meaning of the Sixth Amendment, and (2) the deficient performance prejudiced his defense.  *See id.* at 687; s*ee also Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir.

---

[11]  Out of an abundance of caution, the Court also notes that Davis' prior felony robbery convictions are crimes of violence.  *See United States v. Chandler*, 419 F. App'x 443, 448 (5th Cir. March 18, 2011) (noting one indicted under 18 U.S.C. § 1951 is accused of intending a crime of violence); *see also* United States Sentencing Guideline 4B1.2 cmt. n. 1. ("'Crime of violence'  includes . . . robbery[]" under the federal career offender guidelines).

1996) (noting that ineffective assistance of counsel claims are analyzed under the *Strickland* framework).

Where an attorney's representation falls below an objective standard of reasonableness as determined by professional norms, that performance is deficient. *See Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Strickland*, 466 U.S. at 687-89. Courts scrutinizing counsel's performance assume a "strong presumption" that the assistance was adequate and "that the challenged conduct was the product of reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996) (citation omitted). This presumption may be overcome if a petitioner can identify acts or omissions of counsel that were not the result of a reasoned, professional judgment. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, even unreasonable errors by counsel do not warrant relief if the errors did not affect the judgment. *See Strickland*, 466 U.S. at 691. Rather, actual prejudice results from the errors of counsel when there exists a reasonable probability that, but for the errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

The failure to prove either deficient performance by counsel or actual prejudice as a result of counsel's actions or omissions defeats a claim of ineffective assistance. *See Strickland*, 466 U.S. at 397; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998); *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990). In a case where the state court has rejected the merits of a petitioner's ineffectiveness claims, such as here, the "pivotal question" in a federal habeas proceeding "is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770 (2011) (citations omitted).

**A. Trial Counsel**

Davis claims that trial counsel rendered constitutionally ineffective assistance in failing to move for a directed verdict based on his speedy trial argument and for failing to object to Davis' sentence as an habitual offender pursuant to Miss. Code Ann. § 99-19-83. As the Court has already discussed, Davis has not demonstrated that his speedy trial rights were violated, and counsel was not ineffective in failing to move for a directed verdict on that basis. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (attorneys are not required to file meritless motions). Moreover, trial counsel did object to Davis' sentence as an habitual offender under § 99-19-83. Additionally, the record supports a determination that Davis was properly sentenced, and Davis cannot demonstrate that he was prejudiced by counsel's alleged deficiency as it relates to Davis' speedy trial and sentencing arguments. Therefore, the Court finds that the State court's decision that these allegations are without merit is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. The decision rejecting this claim was not based on an unreasonable determination of facts in light of the evidence presented to the State court. These claims do not warrant federal habeas relief.

**B. Appellate Counsel**

Davis argues that his appellate counsel also rendered ineffective assistance. The *Strickland* test applies to the performance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 397-99 (1985). In *Jones v. Barnes*, 463 U.S. 745 (1985), the Supreme Court held that appellate counsel does not have a duty to raise every "colorable" claim on appeal, but rather, has broad discretion in determining which issues are more likely to be successful. *Jones*, 463 U.S. at 751-54. Davis claims that appellate counsel performed ineffectively in failing to raise his speedy trial

argument or challenge his sentence as an habitual offender on appeal. These claims have already been determined without merit. The Fifth Circuit has held that where there is no prejudice from the trial error, "by extension, we cannot find prejudice from an appellate error predicated on the same issue." *Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999). Therefore, the conclusion that these allegations are without merit is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. The decision rejecting these allegations is not based upon an unreasonable determination of the facts in light of the evidence presented. Federal habeas relief is not warranted.

### Certificate of Appealability

Davis must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless Davis makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which he may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, Davis must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be granted on Davis' claim that his speedy trial rights were violated (Claim II). A COA is denied as to all other claims raised in the petition.

20

**Conclusion**

It is hereby ordered that Davis's petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**. A certificate of appealability is **GRANTED** as to Davis' claim that his speedy trial rights were violated (Claim II). A COA is **DENIED** as to all other claims raised in the petition. A judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 10th day of February, 2014.


**/s/ Michael  P. Mills** _____
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**